13022

WILLARD v. SOUTHERN RAILWAY CO. *ET AL.*

(155 S. E., 833)

April, 1929.

*Messrs. H. E. DePass* and *Frank G. Tompkins* for appellants,

*Messrs. C. E. Daniel, Jesse W. Boyd* and *Nichols, Wyche & Byrnes* for respondent,

November 10, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This suit was brought by the plaintiff in the Court of Common Pleas for Spartanburg County in August, 1927, and is an action for trespass to try title to real estate. Briefly stated, the following facts are admitted or undisputed : The plaintiff is the owner of about 380 acres of land located near Hayne yards, at Spartanburg, to which he has a complete and perfect record title. About 1874, the Spartanburg & Asheville Railroad Company, the defendants' predecessor in interest, constructed through these lands a single-track line of railroad, which they and their successors in interest have since continuously maintained and operated. During the summer of 1926, the defendants installed an additional main track and also an extra switch track on each side of its old main line; and in 1927, pursuant to an order of the Interstate Commerce Commission, they erected on the west side of their old main track an electric block signal line. Neither of the defendants, nor anyone under whom they claim, ever obtained a deed or grant of the property involved in this appeal; and no right-of-way was ever acquired by the defendants by condemnation.

The plaintiff alleged the corporate existence of the defendants and their operation, either as owners or lessees, of a railroad extending from the North Carolina line near Tryon through Hayne, at Spartanburg, S. C.; that he is the owner of the land through which the defendants' single-track line passes, a short distance north of the Hayne yards; and that the defendants, in August, 1926, over his protest and against his written objection, entered upon his lands and constructed additional tracks and committed a forcible

trespass thereon and excluded the plaintiff therefrom, to his damage and injury in the sum of $20,000.

The defendants, by their answer, admitted their operation of the line of railroad as alleged in the complaint, but denied having committed a trespass upon any lands belonging to the plaintiff; and alleged, as a further defense:

"That they are the successors in interest of the Spartanburg and Asheville Railroad Company, a corporation chartered by an Act of the General Assembly of the State of South Carolina, as is set out in Volume XV, Stat. at Large, page 346; and that, as such successors in interest of said Spartanburg and Asheville Railroad Company, they are in possession of and entitled to all of the rights, title and interest of said Spartanburg and Asheville Railroad Company in the right-of-way or easement for railroad purposes which that company acquired, pursuant to the provisions of its charter, in, through, and contiguous to the lands claimed by plaintiff in this case; and that said right-of-way consists of a strip of land 200 feet in width, being the land on which said Spartanburg and Asheville Railroad Company originally entered and constructed its railroad, together with a space of 100 feet on each side of the center of the road. That recently, owing to the rapid increase in the business of the defendants, they being and their predecessor having been common carriers of freight and passengers for hire, engaged in both intrastate commerce and commerce between the states, it became necessary to add additional tracks in and along said line of railway and on said right-of-way of the width of 200 feet, aforesaid, through the lands claimed by plaintiff, and, in order to enable them to meet the demands of the public and their business as common carriers, as aforesaid, they laid, constructed and installed an extra or additional lIne of railway, or track, from Hayne, South Carolina, to Sigsbee, South Carolina, through and along the said right-of-way of the width aforesaid, through and contiguous to the lands claimed by plaintiff.

That it was the duty of defendants, as common carriers of freight and passengers in intrastate and interstate commerce, so to add to their facilities and property used in transportation, and which they had a right to do under and by virtue of the provisions of the aforesaid charter."

The case was tried at Spartanburg before Judge Mann and a jury in April, 1929. At the close of all the testimony, counsel for the defendants made a motion for a directed verdict upon the ground, among others, that the Spartanburg and Asheville Railroad Company, the predecessor in interest of the defendants, had acquired a right-of-way by charter through the land in question of 100 feet in width, measuring from the center of the main line, and had entered upon and constructed its road through same; and, failing in that, that the Court direct a verdict for the defendants for 50 feet on each side from the center of the old main line track, upon the ground that the undisputed evidence showed adverse possession in the defendants to that much of the strip claimed by them through plaintiff's lands. The Court refused the motion and submitted to the jury certain issues, in the form of questions to be answered by them, with the following results:

"Q. 1. What width through the plaintiff's lands did the defendants actually use and occupy prior to 1926? A. 1. 28 feet.

"Q. 2. What width through his lands do they now occupy? A. 2. 69 feet.

"Q. 3. What damages do you find for the plaintiff? A. 3. One thousand dollars."

The defendants appeal and allege error by twenty-five exceptions, but, as stated and argued by their counsel, not nearly so many questions are presented for the Court's consideration.

The appellants' first ground of complaint is that the Court erred in refusing to admit in evidence the charter of the Greenville & Columbia Railway Company (Act Dec. 15,

1845, 11 Stat. S. C., p. 325). As pertinent to the issue, we here quote from the charter of the Spartanburg & Asheville Railroad Company (Act Feb. 20, 1873, 15 Stat. S. C., p. 346), the predecessor in interest of appellants:

"Sec. 4. That said company shall have full power and authority to survey, lay out and construct a railroad from the town of Spartanburg, or from some point on some railroad in the vicinity of said town, and connecting therewith, to the North Carolina line, in the direction of Asheville or Rutherfordton, North Carolina, and the same to equip, use and enjoy, with all the rights, privileges and immunities granted to the Greenville and Columbia Railroad Company, and under the Act incorporating the same, and the several Acts amendatory thereof, so far as they may be applicable to the purposes of the charter hereby granted: Provided, That nothing herein contained shall be so construed as to exempt the said company from the provisions of Section 1, Chapter LXIII, of General Statutes, etc.

"Sec. 5. That all questions affecting the right-of-way between the said company and the owners of any lands over which the said railroad may be located, when the parties cannot agree concerning the same, shall be adjusted and determined in the same manner as provided for in an Act to declare the manner by which the lands, or right-of-way over the lands, of persons or corporations may be taken for the construction and uses of railways and other works of internal improvement, approved September 22, 1868."

The purpose of offering in evidence the charter of the Greenville & Columbia Railway Company was to prove its eleventh section, in support of appellants' claim of 100 feet on each side from the center of the railroad track. This section reads as follows:

"That in the absence of any written contract between the said Company and the owner or owners of land, through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which

the said railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof, and the said company shall have good right and title to the same," etc.

The Court excluded the charter on the ground that the Act creating the defendants' predecessor in interest, the Spartanburg & Asheville Railway Company, "was passed in 1873, after the adoption of the Constitution of 1868, and the enactment of the General Condemnation Act of that year, found in 14 Statutes at Large, page 89, and the issue in this case as to the claimed right-of-way and the charter creating the defendants' predecessor expressly refers the solution of all questions as to the right-of-way to the General Condemnation Act of Sept. 22, 1868, and no legislative enactment prior to that Constitution and that Act can be competent in the present case."

Attention is here called to Article 1, § 23, of the Constitution of 1868, which provides:

"Private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner or a just compensation being made therefor: Provided, however, That laws may be made securing to persons or corportions the right-of-way over the lands of either persons or corporations, and, for works of internal improvement, the right to establish depots, stations, turnouts, etc.; but a just compensation shall, in all cases, be first made to the owner."

Also, to Article 12, § 3:

"No right-of-way shall be appropriated to the use of any corporation until full compensation therefor shall be first made, or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a Court of record, as shall be prescribed by law."

The General Condemnation Act of Sept. 22, 1868 (14 St. at Large, p. 89) contains the following provisions:

"Sec. 1. That whenever any person or corporation shall be authorized by charter to construct a railway, canal, turnpike, or other public highway in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give to the owner thereof (if he be *sui juris* notice in writing that the right-of-way over said lands is required for such purpose, which notice shall be given at least thirty days before entering upon said lands; and if such notice shall be given, and the owner shall not, within the period of thirty days after service of said notice, signify in writing his refusal or consent, it shall be presumed that such consent is given; and such person or corporation may, thereupon, enter upon said lands.

"Sec. 2. That if the owner of the lands shall signify his refusal of consent to entry upon his lands without previous compensation, the person or corporation requiring such right-of-way shall apply, by petition, to the Circuit Judge of the county wherein such lands are situated for the empaneling of a jury to ascertain the amount which shall be paid as just compensation for the right-of-way required."

We are satisfied, from an examination of the Act incorporating the Spartanburg & Asheville Railroad (15 Stat. S. C., 346), that it was not intended by that Act to give any presumptive grant or right-of-way through lands over which the railroad might be constructed similar to that contained in the charter of the Greenville & Columbia Railroad Company (11 Stat. S. C., 324), for the reason that the act expressly provided "that all questions affecting the right-of-way between the said company and the owners of any lands over which the said railroad may be located, when the parties cannot agree concerning the same, shall be adjusted and determined in the same manner as provided" (Section 5) by the General Condemnation Act of 1868; and even if it should be thought that the Act un-

dertook to give to the company the presumptive grant claimed, such of its provisions would be invalid as being in violation of the Constitution of 1868, then of force. It is also to be observed that there is nothing in the Act which undertakes to fix or define the limits of any right-of-way that might be sought or acquired. The right-of-way could be obtained only by proceeding under the Condemnation Act of 1868 or by grant from the owners of the lands through which it was desired to build the railroad, neither of which methods was exercised by the company. And even if the charter of the Spartanburg & Asheville Railroad Company had not referred the solution of all right-of-way questions to the General Condemnation Act of 1868, the appellants would be governed by the law existing at the date of the company's entry upon the lands of the respondent or his predecessors in title, and the date of acquirement of a right-of-way. *McCrea v. Port Royal Railroad Company,* 3 S. C., 381, 16 Am. Rep., 729. Further, if there had been no provision in the company's charter requiring it to obtain its right-of-way under the General Condemnation Act of 1868, it "could acquire a right-of-way only after notice and upon compensation being made to the owners, and that by a jury," as provided by the Constitution of 1868. *C. & N. W. Railroad Company v. Alexander,* 155 S. C., 91, 151 S. E., 893. The trial Judge committed no error in his rulings as complained of, and in refusing the appellants' motion for a directed verdict.

Complaint is also made that the Court committed error in his charge as to adverse possession. Our attention is called especially to the following instruction:

"There is no plea of title by adverse possession, and there is no testimony to sustain a title or right in the defendants based on that which would extend beyond the limits of actual occupancy, as testified to by the witnesses who undertook to state the width of the occupancy. The testimony that when the track was built timbers of such height as might

blow down or fall upon it were cut back on each side does not measure up to the requirements of possession and occupancy required to mature a title, or right by prescription, or adverse possession, because it is undisputed that through the land held certain portions have always been in cultivation and it is a matter of common knowledge that it takes many years to grow a tree to a sufficient height to fall upon the railroad tracks from a distance of fifty feet from the center, to which distance, the testimony is, the woods were cut back when the road was built. There could not be any necessity or reason for a re-cutting and that cannot constitute such continuous, uninterrupted, notorious and exclusive possession based on a claim of right, exclusive of any other right, as would support a title by adverse possession."

The contention is that the defendants sufficiently pleaded the defense of adverse possession by denial in their answer of the material allegations of the complaint; and that the presiding Judge should have submitted the question to the jury under two heads: (1) Adverse possession under a written instrument, or "color of title"; and (2) under a claim of title not written.

The appellants say that the charter of the Greenville & Columbia Railroad Company, Section 11, is their "color of title" showing the extent of the right-of-way claimed by the Spartanburg & Asheville Railroad Company under Section 4 of its charter, and that the first-named charter should have been admitted in evidence for that purpose. We do not agree with this position. Even if the appellants entered the premises of the respondent under the claim of their charter, they could not claim adverse possession under color of title, by relating their acquirement of a right-of-way to the provisions of the charter of the Greenville & Columbia Railroad, for the reason, as we have held, the charter of the Spartanburg & Asheville Railroad Company did not give to that company a presumptive grant as was given in the charter of the Greenville & Columbia Rail-

road, but specifically provided that all right-of-way, where an agreement could not be reached between the company and the owners of the land through which it was sought to build the railroad, should be acquired under the Condemnation Act of 1868. In view of this provision of the charter of the Spartnaburg & Asheville Railroad Company, it is evident that that company entered upon the lands through which its railroad was constructed with full knowledge and understanding of the manner or modes by which a right-of-way might be obtained, and that its right-of-way interests could not be referred to an inapplicable statute or to the inapplicable provisions of the charter of another railroad. Such charter, in contemplation of law (Section 321, Vol. 1, Code 1922), is not a "color of title."

As to adverse possession under claim of title not written: While there was some evidence that at the time the company constructed the road through the lands of the respondent or his predecessors in title, it cut down some of the trees and cleared back a right-of-way fifty feet from the center of the track on each side, the testimony also shows that at that time a great part of the land was already cleared, and that for many years prior to the present suit the appellants and their predecessors in interest exercised no acts of ownership over any part of the right-of-way except that occupied by the railroad track, side ditches, cuts, and fills. There was no evidence of a hostile holding such as was necessary to establish the defendants' claim of title by adverse possession to a right-of-way of fifty feet on each side from the center of the railroad track. Further, it may be questioned whether the defense of adverse possession was properly or sufficiently pleaded; and while the Court did charge the jury, as stated, that there was no such plea of title, his further charge that the appellants were entitled to the land actually and continuously and notoriously occupied by them for a period of ten years, next preceding the institution of the action, was responsive

to the issues made by the evidence, was a correct statement of the law and was all that the defendants had a right to expect or demand. He instructed the jury as follows:

"There is no question of even color of title on the part of the defendants, therefore, any title that they have is limited to the land actually and continuously and openly and notoriously occupied and used by them for a period of ten years or more, next preceding the institution of this action.

"The fact that they cut timbers, if they did, outside and beyond the limits of their actual and continuous occupancy for railroad purposes must be assured to be permissive on the part of the owner and not such an exercise of dominion as might ripen into title in the absence of testimony showing a continuous occupancy and possession which excluded occupancy and possession on the part of the owner."

There was testimony tending to show that the defendants had actually occupied and used as a right-of-way through the plaintiff's land, for a period of more than ten years prior to the summer of 1926, when the additonal tracks were built, a strip not less than 25 feet and not more than 32 feet in width; and that from and after that date, they had occupied and used a strip not less than 68 feet and not more than 70 feet in width. The Court, therefore, properly held that it was for the jury to determine, under the testimony, the width of the strip occupied through plaintiff's lands by the defendants, not exceeding 32 feet, to which the appellants were entitled through actual use and occupancy; and also what additional appropriation of such lands, if any, had been made by the defendants during and since 1926; the Court corectly holding, as a matter of law, that the appellants could not claim title by adverse possession to any such additional appropriations made by them. The trial Judge, under the testimony as we read it, properly submitted these issues to the jury, under correct and appropriate instructions.

Error is also imputed to the trial Judge in refusing to admit in evidence the orders of the Interstate Commerce Commission. However, counsel for appellants in their brief say that it appears that the exclusion of these orders was harmless in view of the admission of the respondent on trial of the case that the question of necessity does not arise, and his concession that if the defendants had the right-of-way for railroad purposes, they could use it for such purposes without consulting the landowner, and that under such a state of facts the plaintiff would not be entitled to any damages nor to the relief he seeks. It appears from this statement that counsel for appellants consider the question to be without merit. Our examination of it leads to the same conclusion.

The complaint that the Court erred in refusing to charge all of defnndants' requests and in adopting plaintiff's requests as his charge has been disposed of by what we have already said.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES BLEASE AND CARTER, concur.

MR. JUSTICE COTHRAN (dissenting) : I can add nothing to my dissenting opinion in *Ry. C. v. Alexander,* 155 S. C., 91, 151 S. E., 893, and for the reasons stated therein I dissent from the conclusions announced herein. See *Southern Railway Co. v. Board of Commissioners of Public Works of City of Union, S. C.* (C. C. A.), 246, folio 383.